UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MELISSA H.,

                Plaintiff,                      6:22-CV-6261Sr

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on July 24, 2008, at the age of 32, alleging disability beginning February 24, 2006, due to right shoulder injury, neck pain/discomfort, lower back discomfort, right arm and hand pain/numbness, depression, fatigue, stomach issues from medications, and migraines. Dkt. #7, p.136.

On March 25, 2006, Peter Remec, M.D., conducted an Independent Medical Examination on behalf of the New York State Workers' Compensation Board. Dkt. #7, p.381. Dr. Remec noted symptoms that suggest a chronic pain syndrome centered in the right should rotator cuff region recently spreading to include the side of the neck and musculature diffusely around the posterior neck, upper back and shoulder region down the arm and forearm. Dkt. #7, p.383. Dr. Remec observed

> Grip strength on the right is diminished 4/5 in grip, elbow flexion and extension. Range of motion shows neck flexion, extension and rotation limited by guarding. Shoulder motion in flexion right to 60 degrees, left 180 degrees, abduction right 60 degrees, left 160 degrees, internal rotation bilaterally to 90 degrees, external rotation 30 degrees right and left.

Dkt.#7, p.383. He restricted plaintiff to "sedentary use of the right upper extremity, without overhead reaching or repetitive pushing or pulling with the right hand." Dkt. #7, p.384. On August 4, 2006, "Given the length of symptoms and resistance to treatment so far," Dr. Remec opined on August 4, 2006 that plaintiff's "prognosis for improvement was guarded." On June 28, 2007, Dr. Remec opined that plaintiff had "reached maximum medical improvement, with minimal response to pain injection treatment, physical therapy, and no recommendations for surgery." Dkt. #7, p.376. Upon examination, Dr. Remec observed that plaintiff "does not abduct her shoulder past 30 degrees or flex past 20 degrees" and that her "right grip strength is minimal." Dkt. #7, p.375.

Treating notes from Robert Reed, M.D. from May 5, 2006 through August 29, 2007 observe objective limitations in the range of motion of plaintiff's right shoulder,

assess myofascial shoulder region pain and restrict plaintiff to no use of her right arm. Dkt. #7, pp.392-454. Work Despcription/Medical Restriction/Capabilities Forms completed by Dr. Reed during this time frame indicate that plaintiff could perform no work requiring the use of her right hand. Dkt. 7, p.397.

On October 10, 2008, while plaintiff was still using crutches following ankle surgery, plaintiff underwent a consultative examination with Justine Magurno, M.D. Dkt. #7, pp.461-467. As relevant to the issues currently before the Court, Dr. Magurno observed:

> Shoulder forward elevation right 30 degrees and left 100 degrees, abduction right 30 degrees and left 90 degrees, internal rotation right 0 degrees and left full, and external rotation right 50 degrees and left full . . . Wrist dorsiflexion right 10 degrees and left full . . . Ulnar deviation right 15 degrees and left full.

Dkt. #7, p.465. With respect to fine motor activity of hands, Dr. Magurno observed that plaintiff

> has difficulty doing a zipper with the right hand. She has to rest multiple times while zipping the zipper to get it all the way to the top. She has difficulty tying a bow and difficulty using a small button. Grip strength right 4-/5 and left 4+/5.

Dkt. #7, p.466. Dr. Mugarno opined that plaintiff "has marked limitations for reaching, pushing, pulling, lifting, carrying, walking . . . and fine motor activities on the right and any kind of activity requiring coordinated fine motor activities involving both hands." Dkt. #7, p.465.

On May 25, 2011, plaintiff underwent a Physical Work Performance Evaluation ("PWPE"). Dkt. #7, pp.682-695. The PWPE noted that plaintiff self-limited on 5% of 20 tasks. Dkt. #7, p.682. The PWPE explained that self-limiting behavior means that the client stopped the task before a maximum effort was reached and noted that possible causes of self-limiting behavior include: (1) pain; (2) psychosocial issues such as fear of re-injury, anxiety or depression; and/or (3) attempts to manipulate test results. Dkt. #7, p.682. Self-limiting below 20% of tasks is considered within normal limits. Dkt. #7, p.682. Although the PWPE identified moderate evidence of low effort and inconsistency behavior, it did not impact the recommendations. Dkt. #7, p.683. Plaintiff was found capable of sustaining sedentary level work with the ability to exert up to 10 pounds of force occasionally and a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects. Dkt. #7, p.682. Although the PWPE refers to a summary letter for details regarding plaintiff's fine motor skills, there does not appear to be any such evidence in the record. Dlt. #7, p.682.

On May 17, 2010, plaintiff appeared without representation at an administrative hearing before Administrative Law Judge ("ALJ"), Tielens, who denied plaintiff's application for disability by decision entered June 25, 2010, based on a finding that plaintiff was capable of performing the full range of light work but was limited in her ability to reach, handle and finger with her right hand but could otherwise perform fine manipulation. Dkt. #7-1, p.488. This decision was vacated by the Appeals Council for additional evaluation of the effect of limitations for use of plaintiff's right arm and hand on plaintiff's residual functional capacity ("RFC"). Dkt. #7, p.726.

On April 27, 2011, plaintiff filed an application for supplemental security income ("SSI"), benefits. Dkt. #7, p.726.

On November 29, 2011, plaintiff appeared with counsel, along with vocational expert, David Sypher ("VE"), and testified at an administrative hearing conducted by video before ALJ Greener, who denied plaintiff's application for disability benefits by decision entered January 10, 2012, based on a finding that, *inter alia*, plaintiff was capable of performing a wide range of sedentary work limited only because she cannot use her right dominant arm and hand to push, pull or operate machine controls more than on an occasional basis. Dkt. #7, p.733. The Appeals Council vacated this decision for, *inter alia*, failure to properly evaluate opinion evidence. Dkt. #7, p.745.

On December 13, 2013, ALJ John Ramos entered a decision denying disability based on a finding that plaintiff was capable of performing sedentary work except that she cannot use her right dominant arm and hand to push/pull or operate machine controls more than on an occasional basis, but could otherwise perform fine manipulation. Dkt. #7, p.759. The Appeals Council remanded this decision with instructions to give further consideration to plaintiff's maximum RFC and obtain testimony from a vocational expert. Dkt. #7, pp.774-775.

On April 15, 2015, plaintiff appeared with counsel, along with VE Christine DiTrinco and testified at an administrative hearing conducted by video before ALJ

Koennecke, who denied plaintiff's application for disability benefits by decision entered May 11, 2015, based upon a finding that, *inter alia*, plaintiff was capable of performing sedentary work except that she cannot use her right dominant arm and hand to push/pull or operate machine controls more than on an occasional basis, but could otherwise perform fine manipulation (fingering). Dkt. #7, p.140. This decision was vacated by the Appeals Council due to the lack of hearing transcripts because the hearing recording could not be located for review. Dkt. #7-1, p.228.

On August 14, 2018, Gary Enders, M.D., completed a Questionnaire indicating that, *inter alia*, plaintiff would be off task more than 33% of the day due to pain, fatigue, diminished concentration or work pace or need to rest. Dkt. #7-1, p.377. Dr. Enders stated that based upon history, examinations, review of medical records and objective clinical and [illegible] subjective findings, this opinion was the same in 2008 to August 14, 2018 and was unlikely to get better. Dkt. #7, p.378.

On January 29, 2019, plaintiff appeared with counsel, along with VE James Soldner and testified at an administrative hearing conducted by video before ALJ Koennecke, who, in a decision dated April 4, 2019, found plaintiff disabled as of August 14, 2018 based upon Dr. Enders' opinion that plaintiff would be off task more than 33% of the day. Dkt. #7, p.49. The ALJ surmised that the off task finding is based upon plaintiff's use of opiates and recognized that there have been issues with her use of opiates previously, but determined that "the evidence and opinion did not indicate that prior to this time it had risen to such a level as to be affecting her on-task behavior."

Dkt. #7, p.49. Therefore, ALJ determined that prior to August 14, 2018, plaintiff was capable of performing sedentary work except that, *inter alia*, she cannot use her right dominant arm and hand to push/pull or operate machine controls more than on an occasional basis, but could otherwise perform fine manipulation (fingering). Dkt. #7, p.42.

On August 4, 2021, the Appeals Council vacated the decision in so far as it denied disability benefits prior to August 14, 2018 for further evaluation of plaintiff's RFC from February 24, 2006 through August 13, 2018, specifically noting Dr. Enders' assessment that his opinion related to the time period from 2008 through 2018. Dkt. #7-1, p.510. Moreover, the Appeals Council questioned the basis for the ALJ's determination that the off task limitation was attributable to plaintiff's opiate use. Dkt. #7-1, p.510. Thus, the Appeals Council specifically noted that the hearing decision did not contain an adequate evaluation of Dr. Enders' opinion. Dkt. #7-1, p.510. The Appeals Council also determined that the decision does not contain an adequate evaluation of the opinions of Dr. Remec, Dr. Reed and Dr. Magurno, as well as the opinions set forth in the PWPE. Dkt. #7-1, pp.511-512.

On February 15, 2022, plaintiff appeared with counsel and testified by telephone, along with medical expert, Steven Goldstein, M.D., and vocational expert ("VE"), Peter Manzi, at an administrative hearing before ALJ John Ramos. Dkt. #7-1, pp.426-480. The parties agreed that the relevant period was from plaintiff's alleged onset date on February 24, 2006 through August 14, 2018, the date plaintiff was awarded SSI benefits under a separate application. Dkt. #7-1, pp.430 & 432.

Dr. Goldstein testified that plaintiff's medical records included reports of muscle pain and inflammation involving the neck and right shoulder, but testified that there was no medically determined diagnosis, explaining that her MRI and x-ray failed to reveal an impairment that would be causing plaintiff's pain. Dkt. #7-1, pp.434-435. Dr. Goldstein opined that reports of chronic pain syndrome did not constitute a definitive diagnosis. Dkt. #7-1, p.437-438. He explained that because many of the medical records focused on plaintiff's work-related injury, it did not appear that providers were considering other possible causes of her pain. Dkt #7-1, pp.442-443. Plaintiff's counsel subsequently pointed Dr. Goldstein to numerous citations in the record documenting objective findings of carpal tunnel syndrome, including an EMG study, as well as a report from Dr. Wensel interpreting an imaging report identifying pars defect at L5-S1 with severe foraminal stenosis and L4-5 advanced facet and disc disease, suggesting lumbar fusion. Dkt. #7-1, pp.444-452. Dr. Goldstein disagreed with Dr. Wensel's interpretation as internally inconsistent and suggested that plaintiff's back surgery was ill advised. Dkt. #7-1, pp.452-455. When pointed to MRI imaging identifying degenerative disc disease at C3-C6 and anterolisthesis and bilateral spondylolysis, Dr. Goldstein testified that any middle-aged person is going to have some degenerative disc disease in the low back and the neck, but that nothing in the record suggested that as causing plaintiff's pain. Dkt. #7-1, p.459. He further noted that sensory exams are subjective. Dkt. 7-1, p.460. Overall, Dr. Goldstein lamented that plaintiff was receiving injections to address "lots of different aches and pains" but no one has determined the cause of such symptoms. Dkt. #7-1, pp.461-462.

When asked to assume an individual of plaintiff's age, education and past work experience who was limited to unskilled sedentary work who could understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; regularly attend a routine and maintain a schedule; interact with supervisors on an occasional basis; work in proximity to coworkers, but only have brief, occasional interaction with them; tolerate only occasional, incidental and brief contact with the public; and make decisions related to the performance of simple work without responsibility for the work of others or where they would have to supervise others, the VE testified that such an individual could wwrk as a table worker, lens inserter, and general assembler, each of which were unskilled, sedentary positions. Dkt. #7-1, pp.475-476. If such an individual was further limited to occasional reaching in all directions, occasional pushing, occasional pulling, and occasional handling with the dominant right hand, there wold be no work available. Dkt. #7-1, pp.475-476. The VE also testified that more than 15% off-task or more than two unscheduled absences per month would preclude employment. Dkt. #7-1, pp.477-478.

By decision entered March 30, 2022, ALJ Ramos made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity between February 24, 2006 and August 14, 2018; (2) plaintiff's degenerative joint disease of the right ankle, degenerative disc disease of the lumbar spine, and depressive disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform sedentary work with the ability to understand and follow simple instructions

and directions and perform simple tasks with supervision and independently, regularly attend to a routine and maintain a schedule, interact with supervisors on an occasional basis throuighout the workday after she has learned the job duties from instruction or demontrative period or lesson, work in proximity to coworkers but only have brief occasional interact[ion] with them and no contact with the public as part of her regular job, tolerate occasional brief incidental contact with the public, make decisions related to the performance of simple work, and work in a position where she was not responsible for the work of others of would have to supervise others; and (5) plaintiff was not capable of performing her past relevant work as a packer, which was a medium exertion, unskilled position, but was capable of working as a table worker, lens inserter or assembler, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #7-1, pp.395-413.

Plaintiff argues that the ALJ failed to comply with the remand order regarding evaluation of the medical opinions, failed to properly evaluate plaintiff's treating providers in accordance with the standards applicable to the time period, failed to evaluate Dr. Reed's opinion at all, erred in failing to evaluate the examination findings and functional limitations identified by Dr. Remec on the ground that his opinion was based upon standards applicable to workers' compensation claims, failed to recognize objective evidence supporting plaintiff's subjective symptoms, failed to recognize deficiencies in Dr. Goldstein's testimony, and erroneously omitted plaintiff's right arm/shoulder limitations as a severe impairment. Dkt. #8-1, pp.11-25. Plaintiff also argues that the ALJ's RFC cannot be supported by substantial evidence absent inclusion of limitations regarding plaintiff's right dominant arm. Dkt. #8-1, pp.25-26.

The Commissioner concedes that the ALJ did not provide an adequate evaluation of the medical opinion evidence from Dr. Reed, but requests remand because the record does not compel a finding that the criteria for disability was met. Dkt. #12-1, p.2.

Plaintiff responds that this matter should be remanded solely for the calculation of benefits because it was legal error for the ALJ to use the date Dr. Enders signed his medical opinion as the date to commence benefits where the opinion indicated that the limitations existed from 2008 through August 14, 2008 and were "unlikely to get better."  Dkt. #13, p.3. Plaintiff notes that the Commissioner has failed to identify any evidence to support the ALJ's use of August 14, 2008 as the date on which she became disabled. Dkt. #13, p.4. Accordingly, plaintiff argues that there is no need to remand for consideration of plaintiff's capacity for reaching and use of her hands/arms because there is persuasive proof of disability based on plaintiff's inability to meet employer demands for staying on task. Dkt. #13, p.5.

Although the Court agrees with the majority of the arguments raised by plaintiff, particularly the lack of substantial basis for failing to include functional limitations regarding plaintiff's use of her right arm, the determinative argument is that the ALJ's evaluation of Dr. Enders' opinion is without basis. The ALJ determined that Dr. Enders' estimate of time off task was purely speculative and inconsistent with the opinion of plaintiff's orthopedic surgeon, Dr. Wensel. Dkt. #7-1, p.410. As plaintiff notes, however, Dr. Wensel did not provide a functional assessment of plaintiff and his treatment note indicating that many of plaintiff's symptoms are due to pain medication

-11-

given her escalating dosing due to increased pain at the end of dose periods (Dkt. #7-1, pp.308-309), is not inconsistent with Dr. Enders' opinion that plaintiff would be off task more than 33% of the day due to pain. Accordingly, the ALJ's RFC assessment is not supported by substantial evidence. Having been given an opportunity to address this specific issue on remand once already, and having failed to address numerous other issues identified upon remand by the Appeals Council, it is tempting to remand this matter for calculation of benefits. In deference to the expertise of the SSA, however, the Court instead remands this matter for further proceedings.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted and this matter is remanded to the Commissioner, and the Commissioner's motion for remand to the Commission (Dkt. #12), is also granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **September 30, 2023**

                                                                           <u>s/ H. Kenneth Schroeder, Jr.</u>
                                                                           **H. KENNETH SCHROEDER, JR.**
                                                                           **United States Magistrate Judge**